UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIMOTHY A. TOBIN | CIVIL ACTION |
| VERSUS | NO. 06-1073 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION "F" (2) |

## FINDINGS AND RECOMMENDATION

Plaintiff, Timothy A. Tobin, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 4232, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

As ordered, plaintiff filed a timely memorandum of facts and law. Record Doc. No. 11. Defendant filed a timely reply memorandum. Record Doc. No. 12.

I.  PROCEDURAL HISTORY

Tobin filed an application for DIB and SSI on October 15, 2003, alleging disability since November 1, 2001, based on back pain, arthritis and hypertension. (Tr. 95-98). After his application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 29, 2003. On February 25, 2005, the ALJ denied plaintiff's application. (Tr. 18-28A). After the Appeals Council denied review on January 10, 2006 (Tr. 6-8), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

II.  STATEMENT OF ISSUE ON APPEAL

Plaintiff contends that the ALJ made the following error:

A.  The ALJ erred in failing to accord controlling weight to the findings and opinions of plaintiff's treating physician.

III.  ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following relevant findings:

1.  Plaintiff's degenerative disc disease is a severe impairment.

2.  His impairment or combination of impairments does not meet or medically equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4, including but not limited to Section 1.04.

3.  His allegations regarding pain, functional limitations and the complete inability to work are not substantiated by record evidence and are not credible.

    4.    Tobin has the residual functional capacity to do sedentary and some limited light work with the following limitations: no frequent lifting over 10 pounds; no frequent stooping or bending; no bending over 70 degrees; no twisting of the body; no significant pulling or pushing; no hyperextension of the lumbar spine; no squatting; and with the ability to alternate sitting, standing or walking every hour with change of position for a few minutes at least.

    5.    Plaintiff's impairments and residual functional capacity preclude his past relevant work as a ship's pilot and an air conditioning and refrigeration mechanic.

    6.    Considering Tobin's impairments, residual functional capacity, age, education and work experience, and the vocational expert's testimony, there are a significant number of jobs in the national economy that plaintiff is capable of performing, such as cashier, dispatcher, telephone operator, information clerk and general office clerk.

(Tr. 27-28).

IV.   ANALYSIS

    A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a

preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2004).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[1]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (2004) ("Medical-Vocational Guidelines").

The claimant has the burden of proof under the first four parts of the inquiry. Newton, 209 F.3d at 453. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

B.   Factual Background

Plaintiff testified that he is not receiving any worker's compensation and was not injured in a work-related accident. (Tr. 32-33). He stated that he graduated from high school and attended two years of vocational school, where he studied air conditioning circulation, among other things. He testified that he had worked as a licensed boat captain, taking pilots to and from ships, in his younger days. (Tr. 34-35). Tobin stated that his primary job during his lifetime was warehouse work, loading and offloading trucks in the shipping and receiving area, which was heavy, strenuous work. He said he only worked in the air conditioning field for a short time.

Tobin testified that he stopped working on November 1, 2001 because of his bad back. He said he has not had any surgery on his back. He stated that Dr. Salvador Mura was his family doctor and Dr. Cracco was his orthopedist. (Tr. 35-36). Plaintiff said he has not seen any doctor concerning his back since his last visit to Dr. Cracco on April 2, 2003. He stated that he attended physical therapy only once on November 8, 2002. He said that his wife has health insurance, but it does not cover everything, and he would have had to pay partially for the physical therapy. (Tr. 37-38).

Plaintiff stated that he lives in Arabi, Louisiana, in St. Bernard Parish. He said his wife was recently laid off from her job but that her medical insurance had covered his visits to Dr. Cracco. He believed that his wife had paid Dr. Cracco a few hundred dollars for Dr. Cracco's written reports dated July 9, 2003. (Tr. 38).

Tobin testified that Charity Hospital in New Orleans was the closest public hospital and that he had not been there for treatment. He stated that he and his wife and two children live in an addition at the back of his parents' house. He said he tries not to drive a car but does drive sometimes. (Tr. 39). He testified that he goes to church sometimes and does a little cooking and a little tidying up of the house, although not as much as it needs.

Plaintiff testified that Dr. Cracco prescribed ibuprofen, Darvocet and Soma. He said that he has pains in his joints, sharp pains in his back and burning pain. He stated

7

that he almost constantly has some type of bad, intolerable pain in his back.  He said that his medications give him some relief.  (Tr. 40-41).  Tobin testified that he has almost constant pain in his legs, mostly in the left leg, but also sometimes in his arms.  He said he gets pains underneath his ribs when he stands up.  (Tr. 41).

Tobin stated that he had not sought treatment at Charity Hospital because he understood from Dr. Cracco that not much more can be done for him than is already being done.  He said that Dr. Cracco wanted him to have injections in his back and that he may need surgery in the near future.  (Tr. 42).  He explained that he had not had the injection because Dr. Cracco could not guarantee that it would work and said that it might work for a week or possibly a month to relieve his pain but it would not improve his condition.  (Tr. 42-43).

Plaintiff testified that he had sought treatment with Dr. Cracco because he had not been happy with Dr. Mura's care.  (Tr. 43).  He said Dr. Cracco told him that he should wait a while longer before he has surgery, but he is not sure why Dr. Cracco told him that.  (Tr. 44).

Tobin said he cooks things that can be stirred and put in a cooking bag in the oven so that he does not have to stand over the stove constantly.  He stated that he will go shopping if he needs a specific item and will just pick up that item and then leave.  He said he is afraid of falling down because he gets twinges in his back and then his legs

give out, so he just stays home. He testified that this happens five days out of a seven-day week. (Tr. 45).

Plaintiff stated that he is constantly in pain and that some days are worse than others, depending on the weather. He said that he stays in bed on the worst days so he does not put himself in a position of getting hurt. He testified that Soma and Darvocet numb the pain enough to make it tolerable, but they do not make the pain go away completely. Tobin said that his medications, especially the Soma, make him feel like he is floating around the room, but it helps with the pain. (Tr. 46). He then said that he would more accurately describe his reaction to Soma as making his head feel cloudy. He said that Motrin gives him stomach pains if he takes it on an empty stomach. He said he takes Motrin rather than Bextra, which had been previously prescribed.

Tobin testified that, on an ordinary day, he lies down a lot, watches television and sits with his father. (Tr. 47). He stated that he does not belong to any clubs or organizations. He said that he no longer is able to hunt or fish because he cannot get around like he used to. He testified that he only goes to church about twice a month, but that he used to teach at church for more than a year and had to stop because of his medications. (Tr. 48).

Plaintiff stated that he takes his medications when he wakes up in the morning and throughout the day. He testified that he is scared to take any epidural injection because

he is afraid of having needles inserted into him and because he does not see what good it would do for him. (Tr. 49-50). He said his doctor told him that he would not have any permanent pain relief from the injection but would only have temporary pain relief. He testified that he was under the impression that he would still have to take his medications even if he had an epidural injection. (Tr. 50).

Tobin said Dr. Cracco had prescribed a corset but that he could not afford it. He said that he has a canvas-type corset, like the ones that Home Depot workers wear, but that Dr. Cracco told him that he needed a specially fitted hard corset to restrict his motion. (Tr. 51-52).

Plaintiff testified that he cannot work because he hurts himself when he tries to be more active and that he tries to limit his activities to avoid pain. (Tr. 53-53). He said Dr. Cracco never suggested that he obtain treatment at Charity Hospital or anywhere else, except the physical therapy, which he could not afford. (Tr. 53).

    C.    <u>Vocational Expert Testimony</u>

A vocational expert, Patricia Riggle, testified at the hearing. The ALJ proposed a hypothetical of a claimant who suffers from pain that is substantially alleviated with medication, has no severe medication side effects and has the residual functional capacity for sedentary work and possibly some limited light work with these limitations: no frequent stooping or bending; no bending over 70 degrees; no twisting of the body; no

significant pulling or pushing; no frequent lifting over 10 pounds; no hyperextension of the lumbar spine; no squatting; and with the ability to alternate sitting, standing or walking every hour with change of position for a few minutes at least. (Tr. 56).

The vocational expert testified that such a claimant could work as a dispatcher, cashier, telephone operator, information clerk or general office clerk, and that these sedentary jobs exist in significant numbers in the region and nationally. (Tr. 57-58).

On cross-examination, Riggle stated that the jobs and numbers that she gave were reduced from the full range of sedentary work because of the need to alternate sitting and standing. (Tr. 63). She stated that her responses took into account all of the limitations proposed by the ALJ and that those restrictions limited her responses to sedentary jobs only. (Tr. 64-66).

The vocational expert testified that a person with the limitations identified by Dr. Cracco on the Multiple Impairments Questionnaire that he completed on July 9, 2003 (Tr. 183-90) would not be able to perform plaintiff's past relevant work or any other work because of the limitation to one to two hours of sitting or standing in an eight-hour day. (Tr. 68).

D.   Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 19-22). I find the ALJ's summary of the medical evidence

11

substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.  Plaintiff's Appeal

The sole issue is whether the ALJ erred in failing to accord controlling weight to the findings and opinions of plaintiff's treating physician, orthopedic surgeon Alain F. Cracco, M.D.  Tobin argues that, under 20 C.F.R. § 404.1527 and Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000), the ALJ should have accorded controlling weight to the opinions contained in Dr. Cracco's responses, dated July 9, 2003, to a Multiple Impairments Questionnaire submitted to him by plaintiff's attorney.  (Tr. 183-90).

In Newton, the Fifth Circuit summarized the law concerning the weight to be accorded a treating physician's opinion, as follows:

> The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  <u>A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence</u>.  The opinion of a specialist generally is accorded greater weight than that of a non-specialist.
>
> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  The treating physician's opinions are not conclusive. <u>The opinions may be assigned little or no weight when good cause is</u>

>shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455-56 (quotations omitted) (citing 20 C.F.R. § 404.1527(d)(2)) (additional citations omitted) (emphasis added).

The ALJ gave "little weight" to Dr. Cracco's conclusions for two reasons. First, the ALJ found that Dr. Cracco was not a treating physician as defined by the Commissioner's regulations because Tobin had seen the doctor only three times, on November 7, 2002, January 31, 2002 and April 2, 2003. (Tr. 26). The regulations define "treating source" as

>your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

13

20 C.F.R. § 404.1502; see also <u>id.</u> § 20 C.F.R. § 404.1527(d)(2) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.").

The ALJ observed that Dr. Cracco had only examined plaintiff on the first and third visits. This is accurate, according to Dr. Cracco's own office notes and Dr. Cracco's letter to plaintiff's attorney dated July 9, 2003. (Tr. 152, 179, 193). Dr. Cracco's notes do not reflect that he took any medical history, review of systems or did a physical examination on plaintiff's second visit. (Tr. 196). The ALJ also noted that Dr. Cracco's questionnaire responses were completed <u>after</u> Tobin had told the doctor that he had been denied Social Security benefits. The ALJ thought it appeared that, in completing the questionnaire, Dr. Cracco was more concerned with helping plaintiff obtain such benefits than in being objective. This is a specific regulatory factor that supports considering Dr. Cracco as a nontreating source.

Thus, substantial evidence supports the ALJ's conclusion that Dr. Cracco had not rendered treatment "long enough to have obtained a longitudinal picture of [Tobin's] impairment" and that Dr. Cracco was not a treating source whose opinions were entitled to controlling weight.

In addition, the ALJ found that Dr. Cracco's questionnaire responses were not supported by the objective evidence of record and were inconsistent with Dr. Cracco's own findings during his examinations of Tobin. (Tr. 26). Plaintiff argues that Dr. Cracco's opinions about Tobin's limitations were consistent with the record as a whole, including the opinions of the two consulting examiners, internists Miljana Mandich, M.D., dated February 6, 2003 and Camalynn Gaines, M.D., dated November 24, 2003, and the numerous x-ray and MRI results in the record.

The ALJ accepted that plaintiff's degenerative disc disease is a severe impairment, which is documented by the numerous x-ray and MRI results in the record. He also accepted certain, but not all, of the functional limitations described by Drs. Cracco and Gaines, to the extent that they were consistent with each other and with the objective medical evidence. However, the ALJ rejected Dr. Cracco's opinion that plaintiff suffers from moderately severe pain and fatigue and the restriction imposed by Dr. Cracco that Tobin could not sit, even with the option of alternating sitting and standing, for more than two hours in an eight-hour day.

Substantial evidence supports the ALJ's conclusions. As he noted, Dr. Cracco's own office notes and narrative report do not reflect such severe pain or restrictions, nor do they contain any mention of fatigue. The medical record as a whole, including Dr. Cracco's own reports, shows that plaintiff's degenerative disc disease was reported by

radiologists as mild, his straight leg raising tests were consistently negative, he had no list, he could reach the distal part of his leg, he had no palpable spasms, his muscle tone, strength and reflexes were intact, he walked normally and he was able to get on and off the examining table without assistance.  (Tr. 160-65, 180-81, 291, 248-50).

Dr. Gaines opined that Tobin should not engage in prolonged standing and walking, but that he could perform sedentary work as long as he could alternate sitting and standing.  (Tr. 250).  Although the ALJ did not accept Dr. Gaines's opinion that plaintiff was restricted to sedentary work and found instead that Tobin could do sedentary and some limited light work with the restrictions noted in his opinion, as a practical matter, all of the jobs that the vocational expert identified as available within those restrictions were sedentary.  (Tr. 57-58).

Thus, substantial evidence supports the ALJ's findings.

## CONCLUSION

The ALJ did not err by failing to give controlling weight to Dr. Cracco's opinions.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10)

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __22nd__ day of September, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE